Enoch B. Woodman, Respondent, *v.* The State of New York, Appellant.

The abandonment and discontinuance by the state of certain portions of the Chenango canal under and pursuant to the act of 1877 (Chap. 404 of the Laws of 1877) as amended in 1878 (Chap. 344, Laws of 1878), did not release the state, so far as the portion so abandoned is concerned, from the liability imposed upon it by the act of 1870 (Chap. 321, Laws of 1870), for damages sustained by individuals caused by negligence of the state officials.

The canal and its appurtenances, notwithstanding the abandonment, remained the property of the state, and it was the legislative intent to continue the control of the superintendent of public works over the abandoned portions until disposed of as authorized by the act.

The provision of said act of 1877 (§ 13) to the effect that no person shall have any claim against the state for or by reason of such abandonment, has reference only to damages incident to the discontinuance.

Where, therefore, after the abandonment, plaintiff was injured by the fall of a farm bridge previously constructed by the state over the abandoned portion of the canal, and upon the hearing of a claim for the injury, it appeared that at the time of the injury such portion including the bridge still belonged to the state, and that the accident was caused by the negligence of the state officials in using an unsound timber in the construction of the bridge, *held,* that the state was liable.

(Argued June 8, 1891; decided June 25, 1891.)

Appeal from an award made by the Board of Claims. The facts are sufficiently stated in the opinion.

*Charles F. Tabor* for appellant. The Board of Claims had no jurisdiction of the claim filed herein and no authority in law to

make an award thereon against the state. (*O'Hara* v. *State*, 112 N. Y. 154; *People* v. *Dennison*, 84 id. 281; *Lewis* v. *State*, 96 id. 71; Laws of 1870, chap. 321; *McDougal* v. *State*, 109 id. 76; *Sipple* v. *State*, 99 id. 284.) By the laws of 1877, the legislature must have intended, as to the canals therein referred to, to have absolved the state from any liability assumed by the act of 1870. (Laws of 1877, chap. 404, §§ 1, 2.) There was no duty imposed by the legislature upon anyone to repair this bridge; it was no longer subject to the authority or control of any officer who could repair it. If there is no duty arising in any way to do a thing, there can be no negligence in omitting to do that thing. (Smith on Negligence, 363; *Robinson* v. *Gell*, 12 C. B. 199; *Mayor, etc.*, v. *Cunliff*, 2 N. Y. 165; *Carpenter* v. *City of Cohoes*, 81 id. 21; *Veeder* v. *Little Falls*, 100 id. 319; *Jenny* v. *City of Brooklyn*, 120 id. 167; *City of Rochester* v. *Campbell*, 123 id. 417; *P. & O. C. Co.* v. *Comrs.*, 27 Ohio St. 14; *Whitney* v. *State*, 96 N. Y. 245; *Eldridge* v. *City of Binghamton*, 120 id. 309.) But, if it could be assumed that, notwithstanding the act of 1877, the Chenango canal was not abandoned after 1878, and that it continued after that time to be subject to the control and management of the officers of the state, as contended for by the claimant, still it is insisted that the award made herein is against law and evidence, and should be reversed. (*Hartwell* v. *Root*, 19 Johns. 344; *Wood* v. *Morehouse*, 45 N. Y. 375; *Clute* v. *Emerich*, 21 Hun, 128; *Ensign* v. *McKinney*, 30 id. 253; *Warner* v. *E. R. Co.*, 39 N. Y. 474; *DeGrauf* v. *N. Y. C. & H. R. R. R. Co.*, 76 id. 129; *Jones* v. *N. Y. C. & H. R. R. R. Co.*, 22 Hun, 286; *Faulkner* v. *E. R. Co.*, 49 Barb. 327.) It was also error for the board to admit the testimony of Kinney, that Leonard had charge of the Chenango canal, the same being objected to by the state. (*People ex rel.* v. *Kings Co.*, 52 N. Y. 563; *Heacock* v. *Thoman*, 14 Wend. 61; *Donohue* v. *State*, 112 N. Y. 142; *Splittorf* v. *State*, 108 id. 205; *Cusick* v. *Adams*, 115 id. 55.) While the legislature has the undoubted right by special act to give the Board of Claims jurisdiction to make an award herein for

such damages as the claimant has sustained, it never has yet done so. (*Cole* v. *State*, 102 N. Y. 48 ; *Hickey* v. *Taafe*, 105 id. 39 ; *Cahill* v. *Hilton*, 106 id. 516.)

*E. Countryman* for respondent. It is claimed by the appellant that by the law of 1877, chapter 404, the state released itself from all obligation to maintain this bridge, and that the claimant is without remedy ; this is erroneous. (*Anderson* v. *Van Tassell*, 53 N. Y. 631 ; Laws of 1870, chap. 321, § 1.) This appeal brings up for review only questions of law, and the question whether the award is excessive. (R. S. [8th ed.] 540.)

H<small>AIGHT</small>, J. On the 14th of July, 1880, the claimant herein whilst engaged in drawing a load of hay over a bridge across the Chenango canal was thrown into the bed of the canal and suffered the damages which were the basis of the award. ·At the time of the injury complained of the claimant was in the occupation of the farm upon which the bridge was partly constructed. The state had dug the canal through the farm near the middle thereof, and at the same time built a bridge across the canal on the south line of the farm and on the north line of the adjoining farm for the joint use of the occupants of the farms, and maintained it until after July, 1880. In 1872 it caused a new bridge to be built upon the site of the former, which was constructed of new materials, with the exception of one of the needle beams, which was taken from the old bridge and placed in the new. It was the old needle beam which broke and precipitated the claimant with his team, wagon, load, etc., into the canal. It had become so decayed that only a thin outside shell remained sound, and a proper examination of it would have discovered its unsound condition. The evidence sustains the finding of the board, that the claimant's injuries were occasioned by reason of the negligence of the state, its officers, agents and servants in charge of the bridge. It is claimed, however, that the board had no power to award damages against the state for the reason that the canal had

been abandoned and discontinued. It appears that on the 1st day of May, 1878, the Chenango canal at the place in question was abandoned and discontinued, pursuant to the provisions of chapter 404 of the Laws of 1877. The act provides :

"Section 1. The following canals of this state shall at and after the respective periods hereinafter specified be abandoned and discontinued as canals, and be no longer subject to the control or authority of any of the canal boards or officers of this state, except as hereinafter specified.

" Sec. 2. All that portion of the Chenango canal commencing at and lying south of the stone culvert in the village of Hamilton, in the county of Madison, and what is called and known as the Chenango canal extension, and its appurtenances shall be abandoned and discontinued on and after the 1st day of May, 1878."

Section 3 of the act provides that it shall be the duty of the canal commissioners or superintendent of public works, subject to the approval of the canal board, after the close of navigation in the year 1878, to advertise for sale and to sell that portion of the Chenango canal which had been abandoned; and section 9 of the act, as amended by chapter 344 of the Laws of 1878, provides that " All such portions of said canals and their branches and feeders so directed to be sold as pass through farming lands and are not referred to in section 5 of this act, except as hereinafter provided, shall be sold and conveyed by said superintendent of public works to the owners of the adjacent lands, the whole width thereof to the adjacent owner who is possessed of the fee on both sides thereof ; and in cases where separate owners are in possession of the fee of the adjacent lands, then to the center of the prism of the canal to the owners on each side, in consideration and upon the condition precedent that such owners shall, in writing, under their hands and seals, release the state from all obligation to maintain the bridges and other structures connected with such portions of the canal, and from all liability for damages arising from the abandonment thereof."

The jurisdiction of the board of claims to award damages

against the state only exists in cases brought within the provisions of the statute making the state liable.   Under the laws of 1870, chapter 321, the state was made liable to all persons and corporations for damages sustained by them from the canals of the state, or from their use and management, or arising from the negligence or conduct of any officer of the state having charge thereof, resulting or arising from any accident or other matter or thing connected with the canals, if the facts proved shall make out a case which would create a legal liability against the state, were the same established in evidence in a court of justice against an individual or corporation.   As we have seen the bridge upon which the accident occurred was constructed by the state over the canal, and was a thing so connected therewith as to bring it within the provisions of the act making the state liable ; but, the canal in question had been abandoned and was no longer subject to the control or authority of the canal board or officers of the state, *except as specified.*   The canal and its appurtenances, including the bridges over the same, still belong to the state, notwithstanding the abandonment.   The superintendent of public works, subject to the approval of the canal board, was authorized to sell and dispose of such portions as had been abandoned, and, in cases where the canal passed through farming lands, to convey the same to the owners of the land upon "the condition precedent that such owners shall, in writing, under their hands and seals, release the state from all obligation to maintain the bridges and other structures connected with such portions of the canals, and from all liability for damages arising from the abandonment thereof.".

Here we have an implied statutory recognition of the obligation of the state to keep in repair the bridges so long as they are permitted to remain or until the canal is sold or conveyed to the adjacent owner.   If there is no liability, why require as a condition precedent a release of the state from such obligation?   It is, therefore, apparent that it was the intention to continue the control of the superintendent of public works to the bridges over the canal until they were

disposed of as provided in the act. At the time of the accident there had been no conveyance of the canal to the adjacent owner, but subsequently the bridge, together with the material out of which it was constructed, was sold by the state.

We have not overlooked the provisions of the concluding sections of the act, to the effect that no person or corporation shall have any claim against the state for or by any reason of the abandonment or discontinuance of the said canals or any of them. This provision should be construed so as to be in harmony with that which precedes it, and it doubtless has reference to damages which are incident to the discontinuance. It evidently was not intended to relieve the state from liability for injuries suffered from the failure to keep in repair bridges which it still maintained.

The award should be affirmed, with costs.

All concur.

Award affirmed.